**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**WALTER DAY,**

    **Plaintiff,**

**vs.**                                   **Case No. 4:07cv138-RH/WCS**

**DR. J. COLON-MORALES,[1]
DR. E. VIZCARRA,
and DR. BIANCO,[2]**

    **Defendants.**

    _____/

## REPORT AND RECOMMENDATION

Defendants Colon-Morales and Vizcarra filed a motion for summary judgment, doc. 40, supported by a separate statement of material facts as to which there is no genuine issue to be tried, several affidavits, and Plaintiff's medical records. Defendants also filed a supporting memorandum of law. Doc. 41. Plaintiff, a *pro se* inmate, was advised of his obligation to respond to the motion under Rule 56, doc. 42, and he has filed his response to the summary judgment motion. Doc. 48.

---

    [1] Defendants have provided this Defendant's full name, Colon-Morales. Doc. 40. Dr. Colon will be used in this report and recommendation..

    [2] Defendants refer to this Defendant as Bianco. Doc. 41, p. 2.

**Allegations of the third amended complaint, doc. 15**

Plaintiff alleges that on August 7, 2002, while confined at Taylor Correctional Institution, he was attacked by another inmate, resulting in a broken jaw. Plaintiff contends he did not receive appropriate medical care, and for five days while in the infirmary, he was never examined by a doctor. He asserts that he could not move his jaw. Plaintiff alleges that after x-rays were taken, he was told he did not have a broken jaw and was released from the infirmary. Plaintiff was not given liquid food to eat and due to the extreme pain, could not chew any meat. After declaring another health emergency on August 28, 2002, it was discovered that Plaintiff did have a broken jaw. Plaintiff was immediately transferred to the Reception Center and underwent surgery on his jaw. Plaintiff has sued three physicians, alleging a violation of his Eighth Amendment rights, claiming they were deliberately indifferent to his serious and painful medical needs. Doc. 15.

**Procedural issue**

Service was carried out only upon Defendants Colon and Vizcarra. The third Defendant, Dr. Bianco, was never served with process. When Plaintiff was ordered to file his response to the pending summary judgment motion, the order noted that this case would "proceed solely against the two Defendants who have filed the motion for summary judgment, doc. 40." Doc. 42, p. 2. The order explained that the discovery period ended on June 6, 2008, *see* docs. 30, 37, and Plaintiff had not "advised the

Court that he utilized discovery to obtain information on the whereabouts of a missing Defendant, Dr. Bianco, for whom service was not completed." Doc. 42, pp. 1-2.

In response to that order, Plaintiff filed a motion requesting a supplemental service order be entered. Doc. 43. Plaintiff's motion, however, was found to be deficient because he provided two possible addresses for service rather than identifying one location where service should be attempted. Furthermore, Plaintiff did not provide a service copy of this complaint as he had been directed. Moreover, Plaintiff's motion, filed on August 11, 2008, indicated he had determined the possible addresses from Defendants' initial disclosures, which he received on April 9, 2008. Doc. 43. Plaintiff failed to provide any explanation as to why he waited well over 120 days to alert the Court to the Defendant's whereabouts, contrary to FED. R. CIV. P. 4(m). Thus, Plaintiff's motion was denied without prejudice and he was given leave to resubmit the motion, simultaneously providing a service copy of his complaint, and showing good cause for his failure to timely seek service on this Defendant. Doc. 46. Plaintiff did not resubmit the motion. Therefore, the only claims which need be considered are Plaintiff's claims against Dr. Colon and Dr. Vizcarra. As will be seen ahead, even if Dr. Bianco had been served, claims against him are time-barred.

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment Defendants initially have the burden to demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). If they do so, the burden shifts to Plaintiff to come forward with evidentiary

material demonstrating a genuine issue of material fact for trial.  *Id.*  An issue of fact is "material" if it could affect the outcome of the case.  Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).  Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient.  The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986).  All reasonable inferences must be resolved in the light most favorable to the nonmoving party.  Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

Local Rule 56.1(A) provides that a motion for summary judgment "shall be accompanied by a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried.  Failure to submit such a statement constitutes grounds for denial of the motion."  The Local Rule also provides that the statement "shall reference the appropriate deposition, affidavit, interrogatory, admission, or other source of the relied upon material fact, by page, paragraph, number, or other detail sufficient to permit the court to readily locate and check the source."  The Local Rule provides that the party opposing the motion shall serve a similar statement of material facts as to which the party contends there is a genuine issue to be tried, using the same format.  Finally, the Local Rule provides that the movant's properly filed statement of undisputed facts will be deemed to be admitted (if supported by record evidence) unless controverted by the opposing party in the manner specified by the Rule.

**Basis for Defendants' Summary Judgment Motion, doc. 40**

Defendants have moved for summary judgment on two grounds.  Defendants assert that even if Plaintiff could present sufficient evidence to support a claim of deliberate indifference, his claims are barred by the statute of limitations.  Defendants contend, however, that Plaintiff has failed to set forth facts to support his claims.

**The relevant Rule 56(e) evidence**

Dr. John D. Colon-Morales [hereinafter "Dr. Colon"] is a medical doctor, licensed by the State of Florida, and who was employed by Prison Health Services, Inc. from December 4, 2000, though August 31, 2002.  Doc. 40, exhibit 1 (doc. 40-2, p. 1); *see*

*also* Colon affidavit (doc. 40-4, p. 2).[3]  Dr. Colon worked as the Chief Health Officer at Taylor Correctional Institution, "providing medical services to inmates detained at the Taylor Correctional Institute, including Mr. Day, the Plaintiff in this matter."  Colon affidavit, p. 2 (doc. 40-4, p. 2).  Dr. Eulogio Vizcarra is also a medical doctor, licensed by the State of Florida, and also employed by Prison Health Services, Inc.  Doc. 40, exhibit 1 (doc. 40-2, p. 1); *see also* Vizcarra affidavit (doc. 40-5, p. 2).  Dr. Vizcarra worked as a staff physician from November 11, 1997, through March 29, 2004, at Taylor Correctional Institution.  Vizcarra affidavit (doc. 40-5, p. 2).

On the evening of August 7, 2002, Plaintiff was involved in a fight with his cell-mate and sustained injuries to his face and jaw.  Doc. 40, exhibit 1 (doc. 40-2, p. 2); Ex. A.  Plaintiff was examined that same night by a nurse, and placed in the infirmary.  Doc. 40, exhibit 1 (doc. 40-2, p. 2); Ex. A.  When Plaintiff requested pain medication, he was given two tablets of Tylenol, 325 mg.  Doc. 40, exhibit 1 (doc. 40-2, p. 2); Plaintiff was observed throughout the night by the nurse, and infirmary staff continued to monitor Plaintiff.  Doc. 40, exhibit 1 (doc. 40-2, p. 2); When Plaintiff requested pain medication again, he was given four tablets of Ibuprofen, 200 mg.  Doc. 40, exhibit 1 (doc. 40-2, p. 2); Plaintiff did not appear to be in acute distress, his respiration was not labored, and by the following morning, August 8th, no significant edema was noted.  Doc. 40, exhibit1 (doc. 40-2, p. 1);

---

[3] Hereafter, all references to exhibits are to those attached to document 40.  References are to the paper copy and page number, followed by a reference (in parenthesis) to the corresponding document and page number in the electronic docket.  Both citations are referenced as a pro se litigant will not have access to the court's electronic docket.

Dr. Colon examined Plaintiff on Thursday, August 8, 2002, the morning after Plaintiff's injury. Doc. 40, exhibit 1 (doc. 40-2, p. 2); Colon affidavit, p. 2 (doc. 40-4, p. 2). Plaintiff primarily complained of pain to his lower jaw, right side. Doc. 40, exhibit 1 (doc. 40-2, p. 2); Colon affidavit, p. 2 (doc. 40-4, p. 2). Dr. Colon examined Plaintiff, noting slight tenderness to palpation, slight swelling, and right canine teeth slightly loose. Doc. 40, attachment 1 (doc. 40-2, p. 2); Colon affidavit, p. 2 (doc. 40-4, p. 2). Dr. Colon scheduled Plaintiff to be examined by a visiting dentist on Saturday, August 10th, and ordered x-rays of the jaw. Doc. 40, attachment 1 (doc. 40-2, p. 2); Colon affidavit, p. 2 (doc. 40-4, p. 2). Dr. Colon also had Plaintiff "officially admitted" to the Infirmary. Doc. 40, attachment 1 (doc. 40-2, p. 2); Colon affidavit, p. 2 (doc. 40-4, 2). Dr. Colon also ordered that Plaintiff be placed on a soft diet, and he prescribed 800 mg. of Ibuprofen three times a day, as needed for a total of ten days. Doc. 40, attachment 1 (doc. 40-2, p. 2); Colon affidavit, p. 3 (doc. 40-4, p. 3). This one examination was the only treatment or evaluation rendered by Dr. Colon as his employment with Prison Health Services ended on August 31, 2002. Doc. 40, exhibit 1 (doc. 40-2, p. 3); Colon affidavit, p. 3 (doc. 40-4, p. 3).

Plaintiff was examined by Defendant Vizcarra on August 9th as a follow-up appointment for an unrelated medical condition. Doc. 40, exhibit 4 (doc. 40-3, p. 1); Vizcarra affidavit[4] (doc. 40-5). Plaintiff complained of lower jaw pain. Doc. 40,

---

[4] Defendant Vizcarra's affidavit indicates Plaintiff's "medical records [are] attached" to the affidavit as Exhibit A. Vizcarra affi, p. 1 (doc. 40-5, p. 1). No medical records were attached to the affidavit. Only one page from Plaintiff's medical record was presented with Defendant's motion for summary judgment, that is the "Chronic Illness Clinic" record dated August 9, 2002. Doc. 40-3.

attachment 1 (doc. 40-2, p. 3); Vizcarra affidavit, p. 2 (doc. 40-5, p. 2). Dr. Vizcarra examined Plaintiff and, as to the complaints of jaw pain, "concurred with Dr. Colon who had already admitted [Plaintiff] to the infirmary for rest, prescribed ibuprofen for pain, scheduled [Plaintiff] to see a dentist and ordered an X-ray." Doc. 40, attachment 1 (doc. 40-2, p. 3); Vizcarra affidavit, p. 2 (doc. 40-5, p. 2). Because x-rays could only be done at the Institution "one day a week," Dr. Vizcarra assumed "that Monday was the day an x-ray was available." Vizcarra affidavit, p. 2 (doc. 40-5, p. 2). In Dr. Vizcarra's "medical judgment, this was the correct treatment plan." Vizcarra affidavit, p. 2 (doc. 40-5, p. 2).

Plaintiff was seen by the dentist, Dr. Panditt, on Saturday, August 10, 2002, who performed an oral examination. Doc. 40, exhibit 1 (doc. 40-2, p. 3); Colon affidavit, p. 3 (doc. 40-4, p. 3); Vizcarra affidavit, pp. 2-3 (doc. 40-5, pp. 2-3). Dr. Panditt noted Plaintiff has "loose lower front teeth consistent with periodontal disease and the recent injury to the mouth." Doc. 40, exhibit 1 (doc. 40-2, p. 3); Colon affidavit, p. 3 (doc. 40-4, p. 3). Dr. Panditt did not "diagnose a fracture and noted that [Plaintiff] was scheduled for x-rays to rule out such fracture." Doc. 40, exhibit 1 (doc. 40-2, p. 3); Colon affidavit, p. 3 (doc. 40-4, p. 3).

An x-ray of Plaintiff's facial bones and lower right jaw was taken on Monday, August 12, 2002. Doc. 40, attachment 1 (doc. 40-2, p. 3); Vizcarra affidavit, p. 3 (doc. 40-5, p. 3). Dr. Bianco, a board certified radiologist, reviewed Plaintiff's x-ray and found the results to be "normal." Doc. 40, attachment 1 (doc. 40-2, p. 3); Vizcarra affidavit, p. 3 (doc. 40-5, p. 3).

Dr. Vizcarra examined Plaintiff again on August 21, 2002, for "matters relating to his jaw." Doc. 40, attachment 1 (doc. 40-2, p. 4); Vizcarra affidavit, p. 3 (doc. 40-5, p. 3). Plaintiff primarily complained of difficulty chewing. Doc. 40, attachment 1 (doc. 40-2, p. 4); Vizcarra affidavit, p. 3 (doc. 40-5, p. 3). An examination revealed no swelling and Dr. Vizcarra found Plaintiff's jaw had a "normal range of motion." Doc. 40, attachment 1 (doc. 40-2, p. 4); Vizcarra affidavit, p. 3 (doc. 40-5, p. 3). Dr. Vizcarra reviewed Plaintiff's medical file, including the notes from the dentist's examination, the radiologist's report, and based on his own "examination and [Plaintiff's] normal range of motion," Dr. Vizcarra "had no reason to doubt the findings of Dr. Bianco and Dr. Panditt." Vizcarra affidavit, p. 3 (doc. 40-5, p. 3). Dr. Vizcarra's medical judgment was that Plaintiff "was recovering slowly from his earlier injury." Vizcarra affidavit, p. 3 (doc. 40-5, p. 3). Dr. Vizcarra advised Plaintiff to seek a dental referral if he continued to have pain. Doc. 40, attachment 1 (doc. 40-2, p. 4); Vizcarra affidavit, p. 3 (doc. 40-5, p. 3). Dr. Vizcarra had no further contact with Plaintiff after August 21, 2002. Doc. 40-2, p. 4; Vizcarra affidavit, p. 4 (doc. 40-5, p. 4).

Plaintiff followed that the advice of Dr. Vizcarra and was examined on August 28, 2002, for his continued jaw pain by Senior Dentist, Dr. Thompkins. Doc. 40, exhibit 1 (doc. 40-2, p. 4).[5] When Dr. Thompkins reviewed the August 12th x-rays, he noted two fractures that had not been noted by Dr. Bianco. Doc. 40, exhibit 1 (doc. 40-2, p. 4). Later that same day, August 28, 2002, Plaintiff was transferred to the North Florida Reception Center for an Oral Surgery consult. Doc. 40, exhibit 1 (doc. 40-2, p. 4). The

---

[5] The remaining facts are taken from Defendant's statement of material facts, but no supporting evidence was provided.

following day, August 29th, additional x-rays were ordered by Dr. Parker Allis. *Id.* Once again, the initial reading of the x-rays by Radiologist V.M. Saenz found "no fracture or dislocation [was] evident in the mandible." Doc. 40, exhibit 1 (doc. 40-2, p. 4). However, a fracture was subsequently detected, and on August 29th, Plaintiff "underwent a procedure which placed a 'Bridle' wire to temporarily stabilize his jaw." Doc. 40, exhibit 1 (doc. 40-2, p. 4). The progress notes in Plaintiff's medical records reflected Plaintiff did well following the procedure. Doc. 40, exhibit 1 (doc. 40-2, p. 5). Plaintiff was examined by Dr. Scott Wenk on September 3, 2002, and he recommended continuing the "Bridle" wire. Doc. 40, exhibit 1 (doc. 40-2, p. 5).

On September 5, 2002, Plaintiff had additional surgery on his lower jaw. Doc. 40, exhibit 1 (doc. 40-2, p. 5). At his follow-up appointment two weeks later, Plaintiff was "recovering well." Doc. 40, exhibit 1 (doc. 40-2, p. 5). Plaintiff voiced no complaints and he was "strongly encouraged" to continue with the soft diet for another month. Doc. 40, exhibit 1 (doc. 40-2, p. 5). Dr. Wenk noted only some "mild right sided mandible swelling" and directed, "follow up as needed." Doc. 40, exhibit1 (doc. 40-2, p. 5).

Plaintiff was returned to Taylor Correctional Institution in early October, 2002. Doc. 40, exhibit 1 (doc. 40-2, p. 5). Upon his return, Dr. Thompkins (a dentist) received and reviewed Plaintiff's dental records. Doc. 40, exhibit 1 (doc. 40-2, p. 5). Between October, 2002, and early 2004, Plaintiff visited the dental clinic fourteen times. Doc. 40, exhibit 1 (doc. 40-2, p. 5). Plaintiff was treated for various dental issues, generally issues associated with periodontal disease, extractions, and having impressions made

for dentures. Doc. 40, exhibit 1 (doc. 40-2, p. 5). The medical records contain no documentation for further complaints about Plaintiff's jaw or any difficulties he experienced. Doc. 40, exhibit 1 (doc. 40-2, p. 5). Furthermore, between 2004 and 2008, Plaintiff had five dental examinations and there is no record of Plaintiff making any complaints about his jaw or mandible. Doc. 40, attachment 1 (doc. 40-2, p. 5).

Plaintiff provided his own sworn affidavit as evidence. Doc. 48, exhibit A (doc. 48, pp. 6-8). Plaintiff asserts that Defendant Colon "misread the x-ray of [his] broken jaw and further prolonged treatment . . . ." Doc. 48, exhibit A (doc. 48, p. 7). Plaintiff contends the Defendants failed to "provide immediate and effective emergency medical treatment . . . ." *Id.*

**Analysis**

Defendants point out that Plaintiff "originally filed this claim relating to alleged inadequate care for his jaw injury in May of 2003 against Dr. Huynh and Dr. Allis." Doc. 41, p. 2, *citing* Case No. 4:03cv144 (SPM-AK). On June 8, 2006, after motions for summary judgment were filed in that case, docs. 44 and 59 of that case, Plaintiff filed a motion seeking leave to file an amended complaint. Doc. 52 of that case. Plaintiff attempted to assert claims against the Defendants in this case: Drs. Colon, Vizcarra, and Bianco. *See* doc. 58, case 4:03cv144. On June 21, 2006, finding the claims were more properly viewed as "a negligence or medical malpractice claim" and amendment would be futile on exhaustion grounds, the motion to amend was denied. Doc. 58. At that point, Plaintiff still had a month or so left in to file his claims within the four year period of limitations. Thereafter, on September 25, 2006, Defendant Allis's motion for

summary judgment was granted and the case dismissed with prejudice for "failure to state a claim and for failure to exhaust administrative remedies."  Doc. 60, case 4:03cv144.

A federal § 1983 claim is governed by the forum state's residual personal injury statute of limitations.  Burton v. City of Belle Glade, 178 F.3d 1175, 1188 (11th Cir. 1999), citing Owens v. Okure, 488 U.S. 235, 249-50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); Wilson v. Garcia, 471 U.S. 261, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).  In Florida, "a plaintiff must commence a § 1983 claim . . . within four years of the allegedly unconstitutional or otherwise illegal act."  Burton, 178 F.3d at 1188, citing Baker v. Gulf & Western Indus., Inc., 850 F.2d 1480, 1483 (11th Cir.1988).  Plaintiff's claims are barred by the statute of limitations.

Although the limitations period is determined by state law, when a § 1983 action accrues is a question of federal law.  Mullinax v. McElhenney, 817 F.2d 711, 716 (11th Cir. 1987) (and cases cited).  The statute of limitations begins to run when the facts supporting the cause of action are apparent or would be apparent to a reasonable person, and when the plaintiff knows or has reason to know of his injury.  Id.

The relevant evidence in this case is not contested.  Plaintiff was injured on August 7, 2002, Plaintiff's x-rays were misread twice, and Plaintiff was not referred to the Reception and Medical Center for treatment and surgery until August 31, 2002.  All care rendered by Defendants Colon and Vizcarra occurred in August, 2002, and they had no contact with Plaintiff after August, 2002.  Plaintiff knew or should have known that his jaw was broken after that was confirmed by Dr. Thompkins, on August 28, 2002,

and again at the Reception and Medical Center.  Indeed, Plaintiff had to have known that his jaw was broken after the first surgery, on August 29, 2002.  Plaintiff should have filed this suit no later about August 29, 2006.  Plaintiff did not file this action until March 29, 2007.  Doc. 1.  By then it was too late.

It is noted for Plaintiff's benefit that he had been warned previously in this case to carefully consider the merits of his claim.  Doc. 10.  When Plaintiff was given an opportunity to file his second amended complaint, it was pointed out to Plaintiff that his claims "from 2002 are likely barred by the statute of limitations."  Doc. 10, p. 2. Because Defendants have not waived that affirmative defense, the motion for summary judgment must be granted.

**Recommendation**

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' motion for summary judgment, doc. 40, be **GRANTED** as Plaintiff's claims were more than four years old when filed and barred by the statute of limitations, and it is further **RECOMMENDED** that judgment be **ENTERED** in Defendants' favor on all claims.

**IN CHAMBERS** at Tallahassee, Florida, on February 13, 2009.


                                    **s/    William C. Sherrill, Jr.**
                                    **WILLIAM C. SHERRILL, JR.**
                                    **UNITED STATES MAGISTRATE JUDGE**

## **NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**